**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-03685-STV

D.T.,[1]

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

**ORDER**

---

Chief Magistrate Judge Scott T. Varholak

This matter is before the Court on Plaintiff D.T.'s Complaint seeking review of the Commissioner of Social Security's decision denying Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 401 *et seq.*, and 1381-83c, respectively. [#1] The parties have both consented to proceed before this Court for all proceedings, including the entry of final judgment, pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. [#9] The Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This Court has carefully considered the Complaint [#1], the Social Security Administrative Record [#10], the parties' briefing [##11, 13, 14], and the applicable case law, and has determined that oral

---

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

argument would not materially assist in the disposition of this appeal. For the following reasons, the Court **AFFIRMS** the Commissioner's decision.

# I. LEGAL STANDARD

## A. Five-Step Process for Determining Disability

The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[2] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just his underlying impairment." *Lax*, 489 F.3d at 1084. "In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility . . ., the Commissioner [ ] shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

"The Commissioner is required to follow a five-step sequential evaluation process to determine whether a claimant is disabled." *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005). The five-step inquiry is as follows:

1. The Commissioner first determines whether the claimant's work activity, if any, constitutes substantial gainful activity;

---

[2] "Substantial gainful activity" is defined in the regulations as "work that (a) [i]nvolves doing significant and productive physical or mental duties; and (b) [i]s done (or intended) for pay or profit." 20 C.F.R. §§ 404.1510, 416.910; *see also* 20 C.F.R. §§ 404.1572, 416.972.

2. If not, the Commissioner then considers the medical severity of the claimant's mental and physical impairments to determine whether any impairment or combination of impairments is "severe;"[3]

3. If so, the Commissioner then must consider whether any of the severe impairment(s) meet or exceed a listed impairment in the appendix of the regulations;

4. If not, the Commissioner next must determine whether the claimant's residual functional capacity ("RFC")—*i.e.*, the functional capacity the claimant retains despite his impairments—is sufficient to allow the claimant to perform his past relevant work, if any;

5. If not, the Commissioner finally must determine whether the claimant's RFC, age, education and work experience are sufficient to permit the claimant to perform other work in the national economy.

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *Bailey v. Berryhill*, 250 F. Supp. 3d 782, 784 (D. Colo. 2017). "The claimant bears the burden of establishing a *prima facie* case of disability at steps one through four," after which the burden shifts to the Commissioner at step five to show that the claimant retains the ability to perform work in the national economy. *Wells v. Colvin*, 727 F.3d 1061, 1064 n.1 (10th Cir. 2013); *Lax*, 489 F.3d at 1084. "A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis." *Ryan v. Colvin*, 214 F. Supp. 3d 1015, 1018 (D. Colo. 2016) (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991)).

**B. Standard of Review**

In reviewing the Commissioner's decision, the Court's review is limited to a determination of "whether the Commissioner applied the correct legal standards and whether her factual findings are supported by substantial evidence." *Vallejo v. Berryhill*,

[3] The regulations define severe impairment as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).

849 F.3d 951, 954 (10th Cir. 2017) (citing *Nguyen v. Shalala*, 43 F.3d 1400, 1402 (10th Cir. 1994)). "With regard to the law, reversal may be appropriate when [the Commissioner] either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards." *Bailey*, 250 F. Supp. 3d at 785 (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quotation omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* at 103. Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). "It requires more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Lax*, 489 F.3d at 1084). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Grogan*, 399 F.3d at 1261-62 (quoting *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992)). The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the [Commissioner's] findings in order to determine if the substantiality test has been met.'" *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted). The Court, however, "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Hackett*, 395 F.3d at 1172.

## II. BACKGROUND

Plaintiff was born in 1981. [AR 244][4] Plaintiff speaks and understands English. [AR 367] He graduated from high school. [AR 369] On January 3, 2023, Plaintiff filed a claim for DIB [AR 244-45] and on January 25, 2023, Plaintiff filed a claim for SSI [AR 251-72]. In each filing he claimed a disability onset date of November 4, 2022 [AR 244, 253], though he later amended the alleged onset date to March 1, 2024 [AR 328]. Thus, Plaintiff was 42 years old at the time of the amended alleged onset date. Plaintiff claims disability based upon rheumatoid arthritis. [AR 368] Plaintiff has worked as a dishwasher in a restaurant, manufacturing assembler, a sales associate, and a warehouse worker. [AR 369]

### A. Medical Background

Plaintiff has been diagnosed with seronegative rheumatoid arthritis, plantar fasciitis, and iritis. [AR 452, AR 769] Plaintiff's iritis began in October 2020 with a severe flare that resolved on topical steroids. [*Id.*] Notes from a November 11, 2021 eye doctor appointment reflect worsening cloudy vision. [AR 680] Plaintiff expressed sensitivity to light and eye redness. [*Id.*] According to Plaintiff, the symptoms had lasted approximately one week. [*Id.*]

During a December 7, 2021 visit at the Colorado Center for Arthritis and Osteoporosis ("Arthritis Center") Plaintiff reported that he was having joint flares and had recently had a flare of his left eye iritis. [AR 482] Plaintiff indicated that his joints had been hurting for the past month. [AR 483] Plaintiff also complained of morning stiffness. [*Id.*] The left eye iritis had occurred approximately two to three weeks earlier. [*Id.*] Notes

[4] All references to "AR" refer to the sequentially numbered Social Security Administrative Record filed in this case. [#10]

from a January 13, 2022 eye doctor appointment reflect blurred vision that was improving. [AR 677] Plaintiff denied flashes or floaters. [*Id.*]

Notes from a March 1, 2022 appointment at the Arthritis Center indicate that Plaintiff was having joint flares and recently had a flare of his right eye iritis. [AR 478] Plaintiff indicated that his arthritis was "flaring up a lot." [AR 479] It was noted that several medications had been tried and failed. [AR 478] Notes from an eye doctor appointment on that same date reflect Plaintiff experiencing eye pain, flashes, and light sensitivity. [AR 674] During a March 8, 2022 visit Plaintiff acknowledged some eye pain but it was described as mild and improving. [AR 671] And during a March 29, 2022 eye doctor appointment Plaintiff denied flashes, floaters, or eye pain. [AR 668]

Notes from a May 17, 2022 appointment at the Arthritis Center indicate that Plaintiff continued to have joint flares. [AR 469] Notes reflect pain and swelling on exam, morning stiffness, and elevated inflammatory markers. [*Id.*] Plaintiff's hands were puffy. [*Id.*] Plaintiff's plantar fasciitis had improved which was noted to be a good prognostic sign. [*Id.*] Plaintiff had recently had a flare of his right eye iritis and complained of blurred vision. [AR 469-70] Notes from an eye doctor appointment from that same day also reflect blurred vision, though Plaintiff denied flashes or floaters. [AR 665]

On August 17, 2022, Plaintiff returned to the Arthritis Center for ongoing management of his seronegative rheumatoid arthritis. [AR 461] Notes reflect that Plaintiff continued to have joint flares. [*Id.*] Plaintiff indicated that the stiffness lasted longer in the morning and during the day, but Plaintiff reported that he did not have much joint pain. [AR 462] The notes indicate that, with the exception of some stiffness, "for the most part" Plaintiff was doing "okay" on Avsola. [AR 461]

Notes from a November 16, 2022 Arthritis Center appointment reflect that Plaintiff continued to have joint flares. [AR 452] According to the notes, Plaintiff's arthritis made it difficult for Plaintiff to use his hands or stand for long periods. [*Id.*] Plaintiff explained that his plantar fasciitis had acted up due to Plaintiff standing for long periods of time. [*Id.*]

Notes from a December 27, 2022 eye doctor appointment reflect slightly worsening blurred vision. [AR 662] Plaintiff also reported eye pain consisting of occasional, dull aches. [*Id.*] Plaintiff denied flashes or floaters. [*Id.*]

Notes from a January 10, 2023 eye doctor appointment reflect mild cloudy vision but no floaters, flashes, or eye pain. [AR 659] During a February 14, 2023 eye doctor appointment Plaintiff denied flashes or floaters but stated that he had a worsening of his dry eyes. [AR 656] Plaintiff also reported a mild decrease in vision since the last visit. [*Id.*] Notes from a March 21, 2023 eye doctor appointment reflect some decreased vision. [AR 653] Plaintiff denied flashes, floaters, or eye pain. [*Id.*]

During an April 13, 2023 office visit Plaintiff indicated that he was still having joint flares. [AR 490] It was noted that several medications had been tried unsuccessfully. [*Id.*] Plaintiff stated that he still had trouble using his hands but that he was doing slightly better. [AR 491] Plaintiff's hands were puffy on examination. [*Id.*] It was further noted that Plaintiff had recently been hospitalized with COVID and an overlapping infection and that physicians were attempting to balance Plaintiff's uveitis and joint pain with the dangers of over-suppressing his immune system. [AR 490 *see also* AR 542-64] During an eye doctor appointment on April 18, 2023 Plaintiff denied any flashes, floaters, or eye pain since his prior eye appointment. [AR 650]

Notes from a July 12, 2023 Arthritis Center appointment reflect continued joint flares. [AR 494] Plaintiff's hands were puffy but he otherwise "overall seem[ed] to be doing okay." [*Id.*] Plaintiff indicated that his plantar fasciitis flared on occasion but was currently quiet. [AR 495] His iritis was also quiet. [*Id.*] During a July 24, 2023 visit to an eye doctor it was noted that Plaintiff had dry eyes but that his iritis had completely tapered off. [AR 647-48]

Notes from an October 16, 2023 visit to the Arthritis Center reflect pain and swelling on examination, as well as morning stiffness. [AR 689] Nonetheless, they indicate that Plaintiff was doing well on his current medication regimen. [*Id.*] Because Plaintiff was one week overdue on his Avsola he had been experiencing some achiness. [*Id.*] His iritis was stable. [AR 690]

Notes from an October 31, 2023 eye doctor appointment reflect mild floaters in Plaintiff's right eye. [AR780] Plaintiff indicated his vision was stable but that his right eye "fe[lt] a little off." [*Id.*] Plaintiff was not experiencing accompanying eye pain. [*Id.*]

During a January 24, 2024 visit to the Arthritis Center Plaintiff indicated that his Avsola may be wearing off as he had a flare up two weeks after his last Avsola. [AR 692] Notes from an eye doctor appointment six days later reflect mild blurred vision, but no eye flashes, floaters, or pain. [AR 777] Plaintiff also complained of dry eyes. [*Id.*]

Notes from a May 14, 2024 eye appointment reflect cloudy vision, ocular redness, light sensitivity, and eye pain. [AR 774] Notes from a May 21, 2024 eye visit reflect right eye flashes and floaters. [AR 771] Notes from a May 28, 2024 eye visit reflect stable vision and no eye pain, flashes, or floaters. [AR 768] Notes from a June 11, 2024 eye

doctor visit reflect cloudy vision and watery eyes. [AR 765] Plaintiff denied eye pain, flashes, or floaters. [*Id.*]

Notes from a July 10, 2024 visit to the Arthritis Center noted pain and swelling on examination as well as elevated inflammatory markers. [AR 754] Plaintiff had been working at an Amazon warehouse and the physician believed that the job had played a role in Plaintiff's inflammatory symptoms. [*Id.*] They further reflect that Plaintiff had missed some infusions due to insurance issues. [*Id.*] The physician believed that work restrictions may help reduce Plaintiff's symptoms. [*Id.*] Plaintiff had also been experiencing some flares of iritis in his right eye as well as some problems with his plantar fasciitis. [AR 755]

Notes from a July 22, 2024 eye doctor appointment indicate that Plaintiff was experiencing cloudy vision but no eye pain. [AR 762] He was not experiencing flashers or floaters. [*Id.*] His symptoms were worse in bright light. [*Id.*] Notes from a September 17, 2024 eye appointment reflect dry and teary eyes, but no pain, flashes, or floaters. [AR 790] Notes from a November 15, 2024 eye appointment reflect occasional tenderness in Plaintiff's right eye that resolved without intervention. [AR 792]

Notes from a November 25, 2025 medical visit reflect that Plaintiff's arthritis was controlled because Plaintiff was not working and did not exert himself. [AR 944] Plaintiff expressed morning stiffness. [AR 943] Pain and swelling were noted on examination. [*Id.*] Plaintiff's physician stated that he did not think Plaintiff could perform meaningful work because even minimal activity caused flare ups in Plaintiff's hands. [AR 944]

### B. Opinion Evidence

On September 7, 2023, consultative examiner Aaron Snyder, M.D. completed a physical RFC. [AR 69-70] According to Dr. Snyder, Plaintiff could occasionally lift/carry ten pounds and frequently lift/carry less than ten pounds. [AR 69] Dr. Snyder opined that Plaintiff could sit, stand, or walk for a total of four hours in an eight-hour workday. [*Id.*] Dr. Snyder further opined that Plaintiff could only occasionally climb ramps, stairs, ladders, ropes, or scaffolds, but that he had no other postural limitations. [*Id.*] Dr. Snyder opined that Plaintiff was limited in his ability to handle and finger, but otherwise did not have any manipulative limitations. [AR 70] Finally, Dr. Snyder opined that Plaintiff needed to avoid extreme cold and vibrations, but otherwise did not have any environmental limitations. [*Id.*]

On January 8, 2024, Prateek Chaudhary, D.O., one of Plaintiff' treating physicians, completed a physical RFC. [AR 804-07] Dr. Chaudhary opined that Plaintiff's symptoms would constantly interfere with Plaintiff's attention and concentration. [AR 805] He further opined that Plaintiff was incapable of even a "low stress" job. [*Id.*] He opined that Plaintiff could walk .5-1 block without rest or severe pain, could sit for 1 hour before needing to get up, could stand for 30 minutes at a time, and could sit and stand/walk less than two hours in an eight-hour workday. [AR 805-06] Dr. Chaudhary opined that Plaintiff would need to take unscheduled breaks and would be absent more than four days per month. [AR 806-07] According to Dr. Chaudhary, Plaintiff could rarely lift less than ten pounds and never lift ten pounds or more; could rarely climb ladders or stairs; and could occasionally look up or down, turn his head right or left, hold his head in a static position, twist, stoop, crouch, or squat. [AR 806-07] Dr. Chaudhary opined that Plaintiff retained

a 25 percent ability to grasp objects with his hands or reach overhead with his arms, but that Plaintiff completely lacked the ability at fine finger manipulations. [AR 807]

On March 15, 2024, consultative examiner Glenn Gade, M.D. completed a physical RFC. [AR 85-86] According to Dr. Gade, Plaintiff could occasionally lift/carry ten pounds and frequently lift/carry less than ten pounds. [AR 85] Dr. Gade opined that Plaintiff could sit for six hours and stand or walk for a total of four hours in an eight-hour workday. [*Id.*] Dr. Gade further opined that Plaintiff could only occasionally climb ramps, stairs, ladders, ropes, or scaffolds, but that he had no other postural limitations. [*Id.*] Dr. Gade opined that Plaintiff was limited in his ability to handle and finger, but otherwise did not have any manipulative limitations. [*Id.*] Finally, Dr. Gade opined that Plaintiff needed to avoid extreme cold and vibrations, but otherwise did not have any environmental limitations. [AR 86]

On October 9, 2024 Dr. Chaudhary completed another physical RFC questionnaire.[5] [AR 786-89] Dr. Chaudhary opined that Plaintiff's symptoms would constantly interfere with Plaintiff's attention and concentration. [AR 787] He further opined that Plaintiff was incapable of even a "low stress" job. [*Id.*] He opined that Plaintiff could walk .5-1 block without rest or severe pain, could sit for 1 hour before needing to get up, could stand for 30 minutes at a time, and could sit and stand/walk less than two hours in an eight-hour workday. [AR 787-88] Dr. Chaudhary opined that Plaintiff would need to take unscheduled breaks and would be absent more than four days per month. [AR 788-89] He opined that Plaintiff would have good days and bad days. [AR 789]

[5] A medical note from Dr. Chaudhary dated July 10, 2024 indicates recommended restrictions of a maximum of ten pounds lifting and gripping for a maximum of five hours per day. [AR 755]

According to Dr. Chaudhary, Plaintiff could rarely lift less than ten pounds and never lift ten pounds or more; could rarely climb ladders or stairs; and could occasionally look up or down, turn his head right or left, hold his head in a static position, twist, stoop, crouch, or squat. [AR 788-89] Dr. Chaudhary opined that Plaintiff retained a 25 percent ability to grasp objects with his hands, but that Plaintiff completely lacked the ability at fine finger manipulations or overhead reaching with his arms. [AR 789]

On February 25, 2025, Dr. Chaudhary submitted a letter indicating that Plaintiff had severe seronegative rheumatoid arthritis with bilateral iritis of the eyes. [AR 942] Dr. Chaudhary explained that his arthritic condition caused severe joint swelling and stiffness. [*Id.*] Dr. Chaudhary further explained that Plaintiff previously worked at Amazon but was unable to work effectively because even minimal use of his hands caused his disease to flare. [*Id.*] Thus, gripping, pulling, pushing, lifting, writing, and typing all caused severe discomfort and pain and those symptoms persisted even with work restrictions. [*Id.*]

### C. Procedural History

Plaintiff's applications for DIB and SSI were initially denied on September 7, 2023. [AR 66-80] Plaintiff requested reconsideration and, on March 15, 2024, Plaintiff's applications were again denied. [AR 81-96] On or about March 28, 2024, Plaintiff completed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR 17, 141-61] A hearing was conducted before ALJ Paul Barker on March 10, 2025. [AR 34-64] Plaintiff and Vocational Expert ("VE") Cyndee Burnett both testified. [*Id.*]

On March 28, 2025, ALJ Barker issued a decision that Plaintiff was not under a disability from November 4, 2022, the alleged onset date, through March 27, 2025, the date of the decision. [AR 17-28] Plaintiff requested a review of that decision by the Appeals Council and, on September 11, 2026, the Appeals Council denied Plaintiff's

request for review. [AR 1-6] On November 17, 2025, Plaintiff timely filed his appeal with this Court. [#1]

### D. The ALJ's Decision

After evaluating the evidence pursuant to the five-step sequential evaluation process, the ALJ denied Plaintiff's applications for DIB and SSI. [AR 17-28] At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 1, 2024, the amended alleged onset date. [AR 20] At step two, the ALJ found the following medically determinable severe impairments: rheumatoid arthritis, recurrent scleritis, and obesity. [*Id.*] At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the appendix of the regulations. [AR 20-21]

Following step three, the ALJ determined that Plaintiff retained the RFC to perform light work[6] but with the following limitations:

> [Plaintiff] can lift a maximum of 10 pounds occasionally and frequently, can occasionally push and pull with the arms, can stand or walk for 4 hours of an 8 hour workday and requires the option to sit at the work station and continue working for 10 minutes after 30 minutes of standing or walking; can occasionally stoop, climb ramps and stairs, kneel, and crouch, and balance, as the term is used in the Department of Labor's Selected Characteristics of Occupations; and can never crawl or climb ladders, ropes, and scaffolds. He can frequently handle and finger, and must never have concentrated exposure to extreme cold and vibrations, and must never be exposed to unprotected heights or dangerous, unprotected machinery.

---

[6] Light work is defined to include work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and that "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[AR 21] The ALJ provided a narrative setting forth the evidence considered in determining the RFC and explaining the ALJ's consideration of the medical opinions in the record. [AR 21-26]

At step four, the ALJ concluded that "the evidence related to any past relevant work is insufficient to make an appropriate and well-informed finding at step four because it is unclear whether any of [Plaintiff's] past work during the relevant time period clearly meets all of the requirements needed for establishing it as past relevant work."[7] [AR 26] At step five, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including the jobs of general office clerks; bookkeeping, accounting, and auditing clerks; and inspectors, testers, and sorters. [AR 27-28] Based on this, the ALJ determined that Plaintiff was "not disabled" from November 4, 2022, the alleged onset date, through March 27, 2025, the date of the ALJ's opinion. [AR 28]

## III. Analysis

Plaintiff raises two issues on appeal. First, Plaintiff argues that the ALJ erred in evaluating Dr. Chaudhary's medical opinion. [#11 at 9-12[8]] Second, Plaintiff argues that the ALJ's reliance on inherently flawed vocational evidence at step five does not meet the Agency's burden of proof. [*Id.* at 12-19] The Court addresses each argument below.

---

[7] At step four, a claimant will be determined to be "not disabled" when it is determined that the claimant retains the RFC to perform either: (1) the actual functional demands and job duties of a particular past relevant job as performed by the claimant, or (2) the functional demands and job duties of that job as generally required by employers throughout the national economy. *See* Social Security Ruling 82-61, 1982 WL 31387, at *2 (1982); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1050 (10th Cir. 1993).

[8] For consistency and clarity, the Court refers to the actual page number of the .pdf document uploaded to the Electronic Court Filing system, rather than to the numbering printed on each page.

### A. The ALJ's evaluation of Dr. Chaudhary's opinion

First, Plaintiff argues that the ALJ erred in evaluating Dr. Chaudhary's medical opinion. [#11 at 9-12] In assessing medical opinions for claims filed on or after March 27, 2017, the ALJ "[does] not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, "the ALJ considers the persuasiveness of those opinions using five factors: supportability; consistency; relationship with the claimant; specialization; and other factors, such as 'a medical source's familiarity with the other evidence in a claim.'" *Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *5 (10th Cir. July 6, 2021) (quoting 20 C.F.R. §§ 404.1520c(c), 416.920c(c)). "The factors of supportability . . . and consistency . . . are the most important factors" and the ALJ therefore must "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions . . . in [the] determination or decision."[9] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *see also Zhu*, 2021 WL 2794533, at *6.

"'Supportability' examines how closely connected a medical opinion is to the evidence and the medical source's explanations: 'The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions . . . will be.'" *Zhu*, 2021 WL 2794533, at *6 (quoting 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)).

[9] "An ALJ must consider, but is not required to explicitly discuss, [the remaining three] factors . . . (relationship with the claimant, specialization, and other factors) unless there are differing medical opinions on an issue and those opinions are equally well-supported and consistent with the record." *Zhu*, 2021 WL 2794533, at *6 n.9 (citing 20 C.F.R. §§ 404.1520c(b)(2), (3), 416.920c(b)(2), (3)).

"'Consistency,' on the other hand, compares a medical opinion to the evidence: 'The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be.'" *Id.* (quoting 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2)). Put another way, the "consistency" factor "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Miles v. Saul*, No. 20-cv-1456-WJM, 2021 WL 3076846, at *3 (D. Colo. Jul. 21, 2021) (quotation omitted).

Here, the ALJ found Dr. Chaudhary's opinions only partially persuasive. The ALJ gave several reasons for this conclusion. First, the ALJ noted that Dr. Chaudhary's November 2022 statement that Plaintiff had trouble using his hands for long periods was both vague and inconsistent with the fact that he was able to perform work after that opinion. [AR 24] Second, the ALJ noted that Plaintiff consistently had no tender joints or swelling upon examination and reported doing well on his rheumatoid arthritis medication. [AR 24-25] The ALJ found such exam findings to be inconsistent with the extreme limitations propounded by Dr. Chaudhary in his 2024 opinions. [AR 25] Relatedly, the ALJ found that Dr. Chaudhary's conclusion that Plaintiff could lift and grip a maximum of ten pounds for a maximum of five hours per day, which Dr. Chaudhary attributed to Plaintiff's inflammatory symptoms, was inconsistent with the physical examination from the same day that indicated that Plaintiff had neither tenderness nor swollen joints. [*Id.*] Next, the ALJ found that Dr. Chaudhary's opinion that Plaintiff was incapable of even low-stress work was inconsistent with Plaintiff's statements that he is able to handle stress very well. [*Id.*] Finally, the ALJ noted that Dr. Chaudhary's 2025 statement that Plaintiff had severe pain with gripping, pulling, pushing, lifting, writing, and typing, and that even

minimal activity caused flares, joint pain, and swelling was both vague (because minimal was not defined) and inconsistent with the treatment notes. [AR 26] These are all valid reasons for finding Dr. Chaudhary's opinions only partially persuasive. *Bainbridge v. Colvin*, 618 F. App'x 384, 390 (10th Cir. 2015) (affirming an ALJ's treatment of opinion evidence where the ALJ rejected the opinion, in part, because it was "vague and conclusory"); *Helmer v. Barnhart*, 112 F. App'x 705, 710 (10th Cir. 2004) (finding that an ALJ did not err in rejecting a medical opinion because the physician's limitations were inconsistent with the claimant's own testimony); *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (an ALJ may reject a treating physician's opinion when it is inconsistent with the physician's medical records); *see also Brison v. Commissioner of Soc. Sec.*, No. 19-cv-03393-KMT, 2021 WL 12334381, at *8-10 (D. Colo. Mar. 11, 2021) (affirming an ALJ's treatment of opinion evidence where the ALJ found the opinion "not persuasive," in part because the opinion was "vague and conclusory"); *Buttner v. Comm'r of Soc. Sec.*, No. 2:18-cv-32-FtM-UAM, 2019 WL 2724016, at *5 (M.D. Fla. July 1, 2019) (finding that the ALJ did not err in discounting a consultative examiner's opined limitations, in part, because they were not supported by the examiner's own examination findings); *Green-Tarpenning v. Berryhill*, No. 17-CV-362-JED-JFJ, 2019 WL 2488729, at *2-3 (N.D. Okla. Mar. 28, 2019) (finding that an ALJ did not err in giving a medical opinion little weight, in part because the physician's limitations were inconsistent with the claimant's own testimony); *Barber v. Berryhill*, CIV 16-0280 KBM, 2017 WL 1381356, at *10 (D.N.M. Mar. 23, 2017) (finding the fact that a doctor's opinion which was inconsistent with his own evaluation decreased the opinion's supportability).

Plaintiff argues that the ALJ ignored the fact that Plaintiff's conditions have good days and bad days and that "Plaintiff's functioning is triggered by productive activity, thus it is the type of physical symptoms that is difficult to observe in a clinical setting, where a patient is more or less at rest." [#11 at 10-11] Plaintiff further argues that Plaintiff's elevated levels of C-Reactive Protein indicate inflammation, thereby supporting Dr. Chaudhary's opinions. [*Id.* at 11-12] But, again, the ALJ did not simply rely upon the examination findings but also relied upon the fact that Plaintiff reported doing well on his medications, amongst other reasons. [AR 24-26] And while this Court may have reached a different conclusion, the Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *Hackett*, 395 F.3d at 1172. Because the Court can follow the ALJ's reasoning and because a reasonable mind might accept the reasoning and find the evidence adequate to support the ALJ's conclusion, the ALJ's treatment of Dr. Chaudhary's opinions is supported by substantial evidence. *Biestek*, 587 U.S. at 102.

**B. The ALJ's step five analysis**

Plaintiff also argues that the ALJ's reliance on inherently flawed vocational evidence at step five does not meet the Agency's burden of proof. [#11 at 12-19] Once again, at step five, the ALJ concluded that Plaintiff could perform the jobs of general office clerks; bookkeeping, accounting, and auditing clerks; and inspectors, testers, and sorters (the "Qualified Jobs"). [AR 27-28] Plaintiff argues that the record does not contain any evidence of the specific numbers of Qualified Jobs in the national economy. [#11 at 13-16] Plaintiff further argues that, to the extent the ALJ relied upon Social Security Ruling ("SSR") 24-3p, SSR 24-3p oversteps the Agency's rulemaking authority as it shifts the evidentiary burden to claimants. [*Id.* at 16-19] The Court addresses these arguments below.

During the hearing, the ALJ propounded a hypothetical claimant who matched the RFC ultimately adopted by the ALJ. [AR 55-56] The VE responded that there were jobs that such an individual could do, though the VE clarified that the examples that she was going to provide were all sedentary jobs. [AR 56] The VE then gave the Qualified Jobs examples. [AR 56-58] For each of these jobs, the VE testified about the number of jobs available in the national economy. [*Id.*] The ALJ relied upon this testimony and concluded that Plaintiff could perform the jobs proffered by the VE. [AR 27-28] Thus, it is simply not true, as Plaintiff contends, that "the record has no evidence of the specific numbers of [the Qualified Jobs]" [#11 at 13]—the VE's testimony constitutes evidence of the number of Qualified Jobs in the national economy.

Plaintiff takes issue with the fact that the VE provided codes from the Standard Occupational Classification ("SOC") system, then offered sample jobs from within those SOC codes. [#11 at 14-16] The VE took larger categories of workers (such as bookkeepers, accountants, and auditing clerks), and then identified smaller subgroups of workers within those larger categories (such as ticket checker) whose duties an individual with Plaintiff's RFC could perform. [AR 56-58] The VE testified that she relied upon the Dictionary of Occupational Titles, the Bureau of Labor Statistics, Occupational Employment and Wage Statistics, the Occupational Retirement Survey, and the United States Census Bureau to arrive at these numbers. [AR 59] The VE was questioned about these numbers by both the ALJ and by Plaintiff's counsel and was able to provide an explanation for how she reached her calculations. [AR 56-62]

The Court concludes that, in this scenario, the VE's conclusions were supported by substantial evidence. Here, the VE provided the source for her numbers—the

Dictionary of Occupational Titles, the Bureau of Labor Statistics, Occupational Employment and Wage Statistics, the Occupational Retirement Survey, and the United States Census Bureau. "She answer[ed] cogently and thoroughly all questions put to her by the ALJ and [Plaintiff's] lawyer." *Biestek*, 587 U.S. at 105. "And nothing in the rest of the record conflicts with anything she sa[id]." *Id.* Thus, the VE's "testimony [was] the kind of evidence—far more than a mere scintilla—that a reasonable mind might accept as adequate to support a finding about job availability." *Id.* (quotation omitted). Accordingly, the Court concludes that the ALJ's step five conclusions were supported by substantial evidence.[10]

## IV. CONCLUSION

Accordingly, for the foregoing reasons, the Court **AFFIRMS** the Commissioner's decision that Plaintiff was not under a disability within the meaning of the SSA from November 4, 2022, the alleged onset date, through March 27, 2025, the date of the ALJ's opinion.

DATED: November 25, 2026

BY THE COURT:

s/Scott T. Varholak
Chief United States Magistrate Judge

[10] The Court thus need not reach the argument of whether SSR 24-3p improperly places the burden on represented claimants to object to vocational evidence at the hearing. [#11 at 16-20] Plaintiff's counsel was able to cross-examine the VE's testimony and the VE credibly answered all questions. Thus, the Court concludes that the VE's testimony qualifies as substantial evidence regardless of the impact of SSR 24-3p.